## JACK v. KANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 54.　Argued November 8, 1905.—Decided November 27, 1905.

This court is bound by the decision of the highest court of a State that a state statute does not violate any provision of the state constitution and is valid so far as that instrument is concerned.

The first ten amendments to the Federal Constitution operate on the National Government only and were not intended to, and did not, limit the powers of the States in respect to their own people.

A State cannot by statute grant immunity to a witness from prosecution by the United States for violation of a Federal statute, or prevent the testimony given by him under compulsion of the statute from being used against him in a prosecution by the United States, and the absence of such immunity from prosecution by the United States, does not necessarily invalidate the statute under the Fourteenth Amendment.

The provisions in the Kansas anti-trust law, as construed by the highest court of that State, compelling witnesses to testify as to violations of the act, and granting immunity from prosecution for violations testified to, or the use of the testimony against the witness, are not void under the Fourteenth Amendment, because immunity from Federal prosecution is not granted; and one committed, in accord with the provisions of the statute, for contempt for refusing to testify to acts within his knowledge is not deprived of his liberty without due process of law.

THE plaintiff in error seeks to review the judgment of the Supreme Court of the State of Kansas, affirming a judgment against him of imprisonment for contempt, entered by direction of the District Court of Shawnee County, in that State. The plaintiff in error had been duly subpœnaed as a witness to appear before the above-mentioned District Court and was examined before that court under and by virtue of the provisions of section 10 of chapter 265 of the Laws of Kansas of 1897. Gen. Stat. 1901, § 7873. The statute is known as the Kansas anti-trust act. Section 10 is reproduced in the margin.[1]

---

[1] Section 10, being section 7873, General Statutes, 1901, reads:

"The several District Courts of this State and the judges thereof shall have jurisdiction, and it shall be their duty, upon good cause shown and

The proceeding was commenced in September, 1903, by the Attorney General and County Attorney of Shawnee County, and those officers presented to the court their verified applica- tion, informing it of the existence of combinations of persons engaged in the operation of coal mines in Osage County to fix the price of coal at the mines, and the price to be charged to purchasers; that the members of the combination met at a place in Shawnee County monthly to fix the minimum price to be charged for coal, and that they would not sell coal for less than the minimum price so fixed, and that the agreements thus entered into were by them carried out and executed. The plaintiff in error was engaged in operating a coal mine in Osage County, and was named in the application as one who had a knowledge concerning the existence of the combination, and a subpœna was thereupon asked for to be served upon him. The district judge granted the application. The subpœna was duly served, and the plaintiff in error appeared pursuant thereto before the district judge and answered some questions that were propounded him by the Attorney General or County Attorney. Other questions were put to him in relation to his knowledge of the meetings, and as to the existence of any agreement be-

upon written application of the County Attorney or the Attorney General, to cause to be issued by the clerk of said court subpœnas for such witnesses as may be named in the application of a County Attorney or Attorney Gene- ral, and to cause the same to be served by the sheriff of the county where such subpœna is issued; and such witnesses shall be compelled to appear before such court or judge at the time and place set forth in the subpœna, and shall be compelled to testify as to any knowledge they may have of the violations of any of the provisions of this act; and any witness who fails or refuses to attend and testify shall be punished as for contempt, as provided by law. Any person subpœnaed and examined shall not be liable to criminal prosecution for any violation of this act about which he may testify. Neither shall the evidence of any such witness be used against him in any criminal proceeding. The evidence of all witnesses so subpœnaed shall be taken down by the reporter of said court, and shall be transcribed and placed in the hands of the County Attorney or the Attorney General, and he shall, in the proper courts, at once prosecute such violator or violators of this act as the testimony so taken shall disclose. Witnesses subpœnaed as provided for in this section shall be compelled to attend from any county in the State."

tween the operators of the coal mines of Osage County, and with regard to the fixing of the price of coal to be sold to residents and citizens of Kansas. The plaintiff in error refused to answer these questions and assigned reasons for such refusal at some length, but the chief ground now relied on in this court as forming a Federal question is that the statute violated the Fifth and Fourteenth Amendments of the Federal Constitution; that the statute did not furnish a broad enough indemnity, and the judgment of imprisonment deprived him of his liberty without due process of law.

The court held that the excuses given for declining to answer were insufficient, and thereupon instructed and directed the witness to answer the questions propounded to him, but he still refused to do so. Whereupon the court found him guilty of a direct contempt of court in refusing to answer the questions, and ordered that he be committed to the jail of Shawnee County until he should answer them, but not beyond a period of thirty days.

The plaintiff in error then appealed from the judgment rendered against him to the Supreme Court, where it was affirmed in May, 1904. To review that judgment of affirmance the plaintiff has brought the case here by writ of error.

*Mr. W. H. Rossington, Mr. Charles Blood Smith, Mr. J. T. Pringle* and *Mr. R. B. Gillerly* submitted for plaintiff in error:

The court erred in denying to the plaintiff the protection claimed under § 10 of the Bill of Rights and the Fifth Amendment to the Federal Constitution.

Whether the origin of the Federal and state constitutional guaranty is to be traced to the common law, or, as some contend, found its genesis in the statute of Edw. II, 1307–1326, long before the adoption of the Federal Constitution the principle had become part of the common law.

Liberally translated, the maxim, *"nemo tenetur seipsum accusare,"* means that any person, whatever the nature of the action, may refuse to answer any question put to him as a

witness, the answer to which will render or tend to render him punishable for a crime, or subject him to a penalty or forfeiture or render him infamous.

The immunity is not confined to a case in which the individual claiming it is a party, nor is it confined to a criminal prosecution. It may be invoked by any person whose testimony is sought, whether the proceeding be civil or criminal.

In the United States there is a constitutional guarantee which protects every witness. *In re Nickell*, 47 Kansas, 734; *Counselman* v. *Hitchcock*, 142 U. S. 547, 562. It is a prohibition acting directly on the court. *Emery's Case*, 107 Massachusetts, 184. Dealing as it does with a principle of civil liberty the guaranty must be liberally construed. *State* v. *Faulkner*, 75 S. W. Rep. 116, 135; *Boyd* v. *United States*, 116 U. S. 631.

Immunity granted by legislative enactment in order to deprive a witness of his right to silence must be as broad and comprehensive as the mischief which would follow the deprivation of the right. *Brown* v. *Walker*, 161 U. S. 591; *Counselman* v. *Hitchcock, supra.*

The witness should be protected from answering, because his testimony might subject him to a criminal prosecution and to the forfeitures and penalties prescribed by the Federal antitrust act, as to which the immunity granted by § 10 is entirely unavailing.

The court below erred and is not sustained by *Brown* v. *Walker*, 161 U. S. 591. The immunity of the witness should not be circumscribed. 1 Burr's Trial, 245; *People ex rel.* v. *Forbes*, 143 N. Y. 219; *Stevens* v. *State*, 50 Kansas, 712, 717. Interstate shipments were involved in these cases and to compel the witness to answer questions would have put him in jeopardy of Federal prosecution.

The witness should not be compelled to answer where he alone knows the facts and of which the judge must himself necessarily be ignorant. *Foot* v. *Buchanan*, 113 Fed. Rep. 161.

A state legislature cannot discharge a witness from an of-

fense committed against the National laws. The immunity granted by the bankrupcty act, the same being not as broad as the interstate commerce law, is not sufficient to protect the witness against offenses under the state laws, and therefore the witness can not be compelled to testify. *In re Nachmann,* 114 Fed. Rep. 995; *In re Shora,* 114 Fed. Rep. 207; *In re Smith,* 112 Fed. Rep. 509; *In re Kantner,* 117 Fed. Rep. 356. See also *People* v. *Nussbaum,* 67 N. Y. Supp. 492, 500; *United States* v. *McKae,* 3 L. R. Ch. App. Cas. 79.

The denial of the claim of immunity interposed by these witnesses was in violation of the Fourteenth Amendment to the Constitution of the United States and deprived them of their liberty without due process of law.

If compelled to answer the witness may be subjected as well to testimony of facts and circumstances forming links in a chain of evidence which would convict him of crime against the National law. This entire procedure, as against one actually or supposedly involved in the commission of an offense under the act, is a denial of the due process of law prescribed by the Fourteenth Amendment.

As to what is due process of law and the law of the land see *Galpin* v. *Page,* 18 Wall. 350, 368; *Hovey* v. *Elliott,* 167 U. S. 416, citing *Capel* v. *Childs,* 2 Cromp. & Jer. 574; *Windsor* v. *McVeigh,* 93 U. S. 274; *Hallinger* v. *Davis,* 146 U. S. 320; *Dun* v. *Hoboken L. &c. Co.,* 18 How. 276; *Bank* v. *Okely,* 4 Wheat. 244; *Dartmouth College Case,* 5 Wheat. 581; *Ex parte Wall,* 107 U. S. 289; *Kennard* v. *Louisiana,* 92 U. S. 481.

*Mr. Edwin A. Austin,* with whom *Mr. C. C. Coleman,* Attorney General of the State of Kansas and *Mr. Otis E. Hengate* were on the brief, for defendant in error:

The constitutionality of the act of the State of Kansas in its general effect, so far as involved in the writ of error of a person convicted of a violation thereof, has been sustained by this court. *Smiley* v. *Kansas,* 196 U. S. 447; *National Oil Co.* v. *Texas,* 197 U. S. 115.

The scope and meaning of this act, as determined by the Supreme Court of the State, conclude this court in determining whether or not such statute and constitution violate the Federal Constitution. *Smiley* v. *Kansas*, 196 U. S. 447.

The Fourteenth Amendment of the Federal Constitution does not so limit the State that a witness examined under this law is justified in refusing to answer because the immunity afforded by § 10 of the act does not protect him against criminal prosecutions, fines and forfeitures for violations of the Federal anti-trust law. *Brown* v. *Walker*, 161 U. S. 591, 608; *People* v. *Nussbaum*, 67 N. Y. Supp. 492, and other cases cited by plaintiff in error are inapplicable.

The provisions of the Fifth Amendment against compelling a witness to testify against himself, are limitations only upon Federal action, and do not apply to prosecutions or proceedings in state courts. *Thorington* v. *Montgomery*, 147 U. S. 490. Nor did the Fourteenth Amendment change the whole theory of the relations of the state and Federal governments to each other or of both governments to the people. *In re Kemmler*, 136 U. S. 436.

The Fourteenth Amendment did not add to the privilege and immunities of citizens of the several States, and it did not so enlarge the effect of the former amendments that they now apply to the States and the citizens thereof. *Maxwell* v. *Dow*, 176 U. S. 581; *Hurtado* v. *California*, 110 U. S. 516.

As to the double jeopardy clause in the Fifth Amendment it has been held that the same act might, as to its character, tendencies, and the consequences it involved, constitute an offense against both the state and Federal governments, and might draw to its commission the penalties denounced by either as appropriate to its character in reference to each. *Fox* v. *Ohio*, 5 How. 410; *United States* v. *Marigold*, 9 How. 560; *Moore* v. *Illinois*, 14 How. 13; *Ex parte Siebold*, 100 U. S. 371; *Dreyer* v. *Illinois*, 187 U. S. 75, 85. See also *West* v. *Louisiana*, 194 U. S. 258. As to what is due process of law see cases cited by plaintiff in error and also *Pennoyer* v. *Neff*,

95 U. S. 733; *Davidson* v. *New Orleans*, 96 U. S. 104; *Kilbourn* v. *Thompson*, 103 U. S. 182; *Hagar* v. *Reclamation District*, 111 U. S. 708; *Leeper* v. *Texas*, 139 U. S. 468.

To find any Federal constitutional restraint of the States, the court must say that imprisonment by a state court of a recalcitrant witness refusing to testify, though granted full immunity from prosecution by that jurisdiction, because his disclosures might subject him to the possibility of prosecution under some Federal law, constitutes a deprivation of liberty without due process of law, using that term only in its own proper vigor and meaning. So there is no question involving the language of the Fifth Amendment not taken and not used in the Fourteenth Amendment, and as to this see *Hurtado* v. *California, supra.*

Authority to determine what crimes are punishable and to provide for their punishment is a part of the general police power of a sovereign and independent State, and, not being conferred by the Constitution of the United States upon the Federal Government, remains with the separate States of the Union. The Fourteenth Amendment does not create, narrow or widen police power, but leaves it as it was before that Amendment was adopted. *In re Rahrer*, 140 U. S. 554; *Munn* v. *Illinois*, 94 U. S. 113, 134; *French* v. *Asphalt Co.*, 181 U. S. 329; *Simon* v. *Craft*, 182 U. S. 436.

The possibility that the testimony might contain disclosures tending to show a violation of the anti-trust law of some other State or of the United States is not a real and probable danger of criminal prosecution, within the constitutional privilege against giving self-incriminating evidence. *People* v. *Butler Street Foundry*, 201 Illinois, 236.

The rule of the common law of England had reference only to matters penal by that law, and a discovery could not be refused because the disclosure would subject the witness to criminal prosecution by some other sovereignty. *King* v. *Willcox*, 1 Sim. (N. S.) 301; *Brown* v. *Walker, supra.*

If the full pardon by the State is ineffectual because it does

not extend to Federal offenses, then the State is limited in its power to legislate concerning its domestic affairs.

Because, as the States cannot affect Federal powers or Federal offenses, no immunity in a state statute can be broad enough to include immunity from Federal prosecutions. *Fletcher* v. *Peck,* 6 Cranch, 128.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The Supreme Court of Kansas has held in this case that the statute under which the plaintiff in error was sentenced to be imprisoned for a contempt of court was a valid statute, and did not violate either the constitution of the State or of the Federal Government.

One portion of the statute in question has already been passed upon by this court and decided to be a valid provision as construed by the state court. *Smiley* v. *Kansas,* 196 U. S. 447. The decision in that case has no application to the section involved herein.

It is contended on the part of the plaintiff in error that the court below denied to him the protection of section 10 of the bill of rights of the constitution of Kansas, and also denied to him the benefit of the provision of the Fifth Amendment to the Constitution of the United States, that no person should be compelled, in any criminal case, to be a witness against himself, and also that he has been deprived of the benefit of the Fourteenth Amendment. We are bound by the decision of the Supreme Court of Kansas that the statute in question violated no provision of the constitution of that State, and that it was a valid statute so far as that instrument was concerned. This doctrine is familiar, and a few of the many cases upon the subject are cited in *Smiley* v. *Kansas,* 196 U. S. *supra.*

It has been so frequently held, as not to warrant the citation of many authorities, that the first ten amendments to the

Federal Constitution operate on the National Government only, and were not intended to, and did not, limit the powers of the States in respect to their own people. *Spies* v. *Illinois*, 123 U. S. 131; *Brown* v. *New Jersey*, 175 U. S. 172, 174. That portion of the Fifth Amendment, therefore, already cited, has no application in a proceeding like this, in a state court, under a state statute.

The plaintiff in error, however, contends that the denial of his claim of right to refuse to answer the questions was in violation of the Fourteenth Amendment to the Constitution of the United States, and deprived him of his liberty without due process of law. This, in reality, is the sole question in the case. He contends that the immunity granted by the state statute, while enforcing the giving of testimony which may incriminate the party interrogated, as a violator of that statute, is not (and could not be) broad enough to provide immunity from prosecution under the Federal anti-trust statute, and that compelling him to answer questions under such circumstances, which might incriminate him as a violator of the Federal anti-trust statute, and upon his refusal condemning him to imprisonment, deprived him of his liberty without due process of law, within the meaning of the Fourteenth Amendment, and the statute is therefore void. The state statute could not, of course, prevent a prosecution of the same party under the United States statute, and it could not prevent the testimony given by the party in the State proceeding from being used against the same person in a Federal court for a violation of the Federal statute, if it could be imagined that such prosecution would be instituted under such circumstances. Is this fact fatal to the proceeding? We think not. Assuming for this purpose that if the statute failed to give sufficient immunity from prosecution or punishment, it would violate the Fourteenth Amendment, and that an imprisonment by virtue of the statute would be depriving the witness of his liberty, without due process of law, we come to an examination of the extent of the immunity in this case.

The question has been before this court in cases somewhat similar to this, although they arose under Federal statutes. In *Counselman* v. *Hitchcock*, 142 U. S. 547, the immunity provided for by section 860 of the Revised Statutes was held not to be broad enough to enable the prosecution to insist upon an answer from the witness. In the subsequent case of *Brown* v. *Walker*, 161 U. S. 591, the statute there involved was held to afford complete immunity to the witness, and he was therefore obliged to answer the questions that were put to him, although they might tend to incriminate him. In that case it was contended, on the part of the witness, that the statute did not grant him immunity against prosecutions in the state courts, although it granted him full immunity from prosecution by the Federal Government. This contention was held to be without merit. While it was asserted that the law of Congress was supreme, and that judges and courts in every State were bound thereby, and that therefore the statute granting immunity would probably operate in the state as well as in the Federal courts, yet still, and aside from that view, it was said that while there might be a bare possibility that a witness might be subjected to the criminal laws of some other sovereignty, it was not a real and probable danger, but was so improbable that it needed not to be taken into account.

The Supreme Court of Kansas has held in this case that in the proceeding under the section in question the witness can only be asked material questions relating to information regarding any alleged violation of the statute relating to transactions within the State, and that it would not be material, and consequently not permissible, to ask a witness in relation to matters of interstate commerce, which might constitute a violation of the Federal anti-trust act. Therefore, the opinion continued, if in the course of an examination properly made, in regard to transactions within the State, information should incidentally be given which might possibly be used in a prosecution under the Federal act; such possible prosecution did not operate as a reason for permitting the witness to refuse to

answer; that it could not be presumed that under such circumstances any Federal prosecution would ever take place, and that it was, within the reasoning of *Brown* v. *Walker*, *supra*, a danger so unsubstantial and remote that it was not necessary (as it was impossible) for the statute to provide against it. We regard this as a sound view. We do not believe that in such case there is any real danger of a Federal prosecution, or that such evidence would be availed of by the Government for such purpose. We think the legal immunity is in regard to a prosecution in the same jurisdiction, and when that is fully given it is enough. The principles underlying the provision itself have been thoroughly treated in the above cited cases, and it would be out of place to here renew their discussion.

We are of opinion that no Federal right of the plaintiff in error has been violated, and the judgment of the Supreme Court of Kansas must, therefore, be

*Affirmed.*

MR. JUSTICE BREWER and MR. JUSTICE MCKENNA dissented.