In re WERNER. (No. 7063.)

(Supreme Court, Appellate Division, First Department. April 9, 1915.)

WITNESSES ☜297—PRIVILEGE—SELF-INCRIMINATION—PROSECUTION IN ANOTHER STATE—CONSTITUTIONAL AND STATUTORY PROVISIONS.

The State Constitution (article 1, § 6) and a provision of the Code of Civil Procedure declare that no one shall be compelled in any criminal case to be a witness against himself. A proceeding for disbarment charged the attorney with having conspired with his client and others to procure a divorce fraudulently in the state of Illinois, and the client, who at-

tended as a witness before a referee, refused to answer certain relevant questions on the ground that to do so would tend to incriminate him and expose him to an apprehended criminal prosecution in the state of Illinois, as to which it appeared that in 1913 a complaint was lodged with the prosecuting attorney of Cook county, Ill., charging the same conspiracy, which, if any, was entered into before 1901, and that no criminal prosecution had been commenced or even threatened by any person having power to carry out such a threat, and that, as declared by the prosecuting attorney, such a charge would be difficult to sustain before a grand jury in Illinois unless one of the co-conspirators should volunteer to become a witness. *Held*, in view of the fact that the courts of New York state can know nothing of the policies and rules or the real probabilities of danger of prosecution under the laws of another state, that the witness had failed to show any real or substantial danger to be apprehended from his answers to the questions and would be ordered to answer.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1011, 1026–1037; Dec. Dig. ☞297.]

Dowling, J., dissenting.

Disbarment proceeding by the Association of the Bar of the City of New York against Louis Werner, an attorney. Motion to punish William Guggenheim, a witness in the proceeding, for contempt in refusing to testify before a referee. Motion granted, and witness directed to answer.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

George A. Strong, of New York City, for the motion.
George Gordon Battle, of New York City, opposed.

SCOTT, J. The proceeding in which this motion arises was instituted by the Association of the Bar of the City of New York to procure the disbarment of an attorney for unprofessional conduct. The charge is that said attorney conspired with the witness William Guggenheim, who was his client, and with other persons, to fraudulently procure a divorce in the state of Illinois. The matter was referred to a referee, before whom the said Guggenheim was subpœnaed to attend as a witness, and did so attend. Certain questions were put to him which the referee held to be pertinent and relevant to the matter then before him, and as to the pertinence and relevancy of which no question is made on this motion. All of these questions the witness declined to answer on the ground that to do so would tend to incriminate him, and he presented to the referee a carefully formulated statement of the grounds upon which he based his refusal to answer, and the reasons therefor.

From this statement it appears that the criminal prosecution which he apprehends is one which may be instituted in the state of Illinois, it being conceded that there is no apprehension of any criminal prosecution in the state of New York; any such prosecution being barred by the statute of limitations. The witness, of course, relies upon the familiar provisions of the Constitution of this state and of the Code of Criminal Procedure to the effect that a person may not be compelled to be a witness against himself in any criminal action or proceeding. The question we are called upon to consider therefore is whether the con-

stitutional and statutory provisions above referred to justify a witness in refusing to answer in this state, because his answers may tend to incriminate him in a criminal proceeding which, as he fears, may be commenced against him in a foreign state. While this question does not appear ever to have been passed upon in this state, it has frequently arisen in the federal courts, in the courts of sister states, and in England, and the answer has almost invariably been in the negative.

The history and development of the rule granting a witness the privilege of refusing to give self-incriminating testimony is fully traced by Prof. Wigmore in his Treatise on Evidence (chapter 78), and he answers the questions above suggested as follows:

"It is not in the power or duty of one state, or of its courts, to be concerned in the criminal law of another state. For the former, there is but one law, and that is its own. The boundaries of our Constitution and our sovereignty are coextensive. A Constitution is intended to protect the accused against the methods of its own jurisdiction and no other. The court's view, as well as its functions, should be confined to its own organic sphere. Practical considerations also deter. The court of one state knows nothing of the policies and rules of other systems, and it risks error and adds great burdens in attempting to master them. Further, it cannot well know the real probabilities of danger or prosecution under another system; for it would need to know what means and motives for prosecution there existed, what likelihood there was of migration thither by the accused or of his capture when arrived or of his involuntary extradition, and what the probability was of the discovery and employment in that prosecution of the disclosure now desired. Even if it could ascertain these elements of probability, it could not define any workable rule for measuring them. The only conceivable rule would be that, when an act was by any possibility capable of being treated as criminal by the law of any other sovereignty, the privilege should protect it. That such a rule should be seriously suggested seems incredible."

After a discussion of many authorities, the learned author sums up the rules to be deduced from them as follows:

"In point of precedent, three different cases may be distinguished: (1) The act may be criminal in another court or system of law in the same jurisdiction of legislative sovereignty; here the privilege applies. (2) The act may be admitted or proved to be actually criminal by the contemporary laws of another and independent sovereignty; here the privilege ought not to apply, for the reasons above stated; but the precedents are not harmonious. (3) The act may not be admitted or proved to be criminal by any other state's law or, if thus criminal, to have been done so as to make the claimant of the privileges actually amenable to that law; here the privilege ought certainly to be denied, and it would seem that any court would concede this."

The respondent here undertakes to prove, as matter of fact, that the conspiracy in which the witness is claimed to have participated does constitute a crime under the laws of the state of Illinois, thus bringing the particular question which we have to consider within the second class of cases mentioned by Prof. Wigmore, as to which he says that the privilege ought not to apply although the precedents are not harmonious.

The question has frequently been considered by the Supreme Court of the United States. In the recent case of Hale v. Henkel, 201 U. S. 43, 26 Sup. Ct. 370, 50 L. Ed. 652, the question was re-examined by the court with care. In that case the witness had been interrogated before the federal grand jury in a criminal proceeding initiated under

the so-called Sherman Anti-Trust Act (Act July 2, 1890, c. 647, 26 Stat. 209), as to which a federal statute afforded ample immunity to any witness testifying in such a proceeding. He refused to testify, however, upon the ground that the federal statute of immunity would be of no avail in any prosecution which might be initiated by the people of the state of New York under a similar anti-trust statute in that state (Consol. Laws, c. 20, §§ 340–346), and hence that he was privileged to refuse to give testimony in the federal courts, which might incriminate him in any proceeding which might be brought in a state court. This objection raised the precise question we are now called upon to consider, and it was answered against the contention of the witness. It was conceded that the federal immunity statute would afford no protection in a state prosecution; but notwithstanding the court refused to recognize the claim of privilege, saying:

"The further suggestion that the (United States) statute offers no immunity from prosecution in the state courts was also fully considered in Brown v. Walker [161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819], and held to be no answer. The converse of this was also decided in Jack v. Kansas, 199 U. S. 372 [26 Sup. Ct. 73, 50 L. Ed. 234, 4 Ann. Cas. 689], namely, that the fact that an immunity granted to a witness under a state statute would not prevent a prosecution of such witness for a violation of a federal statute did not invalidate such statute under the fourteenth amendment. It was held both by this court and by the Supreme Court of Kansas that the possibility that information given by the witness might be used under the federal act did not operate as a reason for permitting the witness to refuse to answer, and that a danger so unsubstantial and remote did not impair the legal immunity. Indeed, if the argument were a sound one, it might be carried still further and held to apply, not only to state prosecutions within the same jurisdiction, but to prosecutions under the criminal laws of other states to which the witness might have subjected himself. The question has been fully considered in England, and the conclusion reached by the courts of that country that the only danger to be considered is one arising within the same jurisdiction and under the same sovereignty."

The court distinguished United States v. Saline Bank, 1 Pet. 100, 7 L. Ed. 69, wherein the claim of privilege had been upheld by saying:

"It is sufficient to say that the prosecution was under a state law which imposed the penalty, and that the federal court was simply administering the state law, and no question arose as to a prosecution under another jurisdiction."

The witness here, however, insists that the Supreme Court stated the rule too broadly in saying that it had been settled in England that the only danger to be considered is one arising within the same jurisdiction and under the same sovereignty.

The English cases cited to support the rule rest upon one, and sometimes on both, of two reasons. The earliest case cited to us, and apparently the first case dealing with this precise question, was King of the Two Sicilies v. Wilcox et al., 7 State Trials, N. S. p. 1050. In that case the King of the Two Sicilies had filed a bill in chancery in England to compel the delivery to him of a steamship on the ground that the vessel was the property of certain rebellious subjects in Sicily. Plaintiff called upon defendants to produce certain documents, which the latter refused to do upon the ground that by doing so they would

subject themselves to criminal prosecution in Sicily. It was not proved as matter of fact what were the laws of Sicily on the subject, nor was there any proof as to what acts on the part of the defendants would constitute a crime in Sicily, and no proof as to the right of the Sicilian government to procure the extradition of the defendants. Lord Cranworth overruled the plea of privileges on two grounds:

"First, that no judge can know as matter of law what would or would not be penal in a foreign country; and, second, because in order to make the disclosure dangerous to the party who objects it is essential that he should first quit the protection of our laws and willfully go within the jurisdiction of the laws he has violated."

The witness in the present case urges that neither of these reasons is sufficient to justify the refusal to extend to him the privilege against self-crimination. As to the knowledge of the foreign law, he claims to have established that as a matter of fact by the affidavit embodying the statutes and decisions of the courts of Illinois. As to the second reason given by Lord Cranworth, he refers to the provisions of the federal Constitution relating to interstate extradition, and points out that if he should be indicted in Illinois it would no longer be a matter of choice with him whether he should go into that state to face a trial.

So far as concerns the two reasons given by Lord Cranworth for refusing the privilege in the case before him, the position taken by the witness here carries much weight. In United States v. McRae, L. R. 4 Eq. 327, a discovery was sought by the plaintiff in an action against the defendant in which the United States sought an account of all moneys received by defendant as agent for the Confederate States of America. The defendant pleaded that by an act of the Congress of the United States the property of any person acting as an agent of the Confederate States was made liable to confiscation, and that proceedings in rem were then actually pending in the United States to confiscate the defendant's property. The Vice Chancellor held that the plea of privilege was well taken, and distinguished the King of the Two Sicilies Case by the fact that the statute of the United States was pleaded as a fact, and that since the pending proceeding in the United States was one in rem the defendant could not protect himself by abstaining from returning to that country.

A more common reason for refusing the privilege in a case like the present is that the courts of one state can know nothing of the policies and rules of the other legal systems, and cannot well know the real probabilities of danger of prosecution under another system; for, as pointed out by Prof. Wigmore, supra:

"It would need to know what means and motives for prosecution there existed, what likelihood there was of migration either by the accused, or of his capture when arrived, or of his involuntary extradition, and what the probability was of the discovery and employment in that prosecution of the disclosure now desired. Even if it could ascertain these elements of probability, it could not define any workable rule for measuring them."

The same reason for refusing the privilege has been given in numerous cases because the danger to be apprehended of a prosecution in a foreign state was deemed to be "unsubstantial and remote." Queen

v. Boyes, 1 B. & S. 311; Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819; Jack v. Kansas, 199 U. S. 372, 26 Sup. Ct. 73, 50 L. Ed. 234, 4 Ann. Cas. 689; Hale v. Henkel, supra.

The witness seeks to avoid the application of the rule almost universally declared in this country by insisting that the danger of a prosecution in Illinois is not remote and unsubstantial, but real and substantial. To this end he states that in the year 1913 a complaint was lodged with the prosecuting attorney of Cook county, Ill., charging this witness, with others, with the same conspiracy which is made the basis of the charge against the attorney in this proceeding, and that no action has yet been taken thereon. The conspiracy, if there was one, must have been entered into in or before the year 1901; for it was in March of that year that the divorce was obtained which is said to have been the subject of the conspiracy. Thus 14 years have now elapsed, and no criminal prosecution has been commenced or even threatened by any persons having power to carry out such a threat; for the mere laying of a complaint before a prosecuting officer is not the commencement of a criminal proceeding, and the delay of two years on the part of the prosecuting attorney in acting upon the complaint is far from suggesting any purpose to act upon it. Furthermore, it is not easy to see how such a charge could be supported before a grand jury in Illinois, unless some one of the co-conspirators should volunteer to become a witness, of which there seems little probability. Indeed, it is stated on the record, by counsel for the witness, that the state's attorney of Cook county has declared that he would not submit the charge to any grand jury, unless the witness' former wife, herself a party to the conspiracy, if there was one, would come into the state of Illinois and agree to remain there, which she declined to do.

On the whole, we are of the opinion that the witness has failed to show that there is any real and substantial danger to be apprehended that his answers to the questions propounded to him will subject him to the peril of a criminal prosecution. That any apprehension upon the subject the witness may now entertain is a matter of recent growth is indicated by the fact that in another proceeding he answered, without pleading his privilege, many of the same questions which he now refuses to answer.

We see no reason why the rule generally applied in this country should be departed from in this case.

The motion is, accordingly, granted, and the witness directed to answer.

INGRAHAM, P. J., and CLARKE and HOTCHKISS, JJ., concur.

DOWLING, J. (dissenting). I believe that the witness was within his rights in refusing to answer the questions put to him, for the reason that it has been made to appear that the conspiracy to which he is claimed to have been a party is a criminal offense under the laws of the state of Illinois, thereby differentiating this case from that of the King of the Two Sicilies v. Wilcox et al., wherein there was no proof of the laws of Sicily nor that the acts of the defendants were a crime

under such laws. It furthermore appears that there is pending before the district attorney of Cook county in the state of Illinois a charge against this defendant of being concerned in the commission of such offense against the laws of that state; that the statute of limitations has not run against such charge; and that the question of a prosecution therefor has been pending for some time before such district attorney, who has announced no intention of abandoning the same. Therefore the danger which the witness apprehends is not unsubstantial, remote, or speculative, but serious, present, and urgent. Nor does the fact that the witness has answered some of these questions at another time prevent his now raising his privilege. Commonwealth v. Phoenix Hotel Co., 157 Ky. 180, 162 S. W. 823; Grattan v. Metropolitan Life Ins. Co., 92 N. Y. 287, 44 Am. Rep. 372; Boston Marine Ins. Co. v. Slocovitch, 55 N. Y. Super. Ct. 452.

I am of the opinion, therefore, that the motion to punish the witness for contempt should be denied.