## UNITED STATES v. MURDOCK.
### No. 1680.

District Court, S. D. Illinois, S. D.
Oct. 28, 1930.

Marks Alexander, Asst. U. S. Atty., of Springfield, Ill., for the United States.

Harold J. Bandy, of Granite City, Ill., for defendant.

FITZHENRY, District Judge.

The indictment charges the defendant with having violated section 146 of the Revenue Act of May 29, 1928 (USCA title 26, § 2146), and also section 1104 of the Revenue Act of 1926 (USCA title 26, § 1247), in that defendant willfully refused to supply information to a revenue agent concerning certain substantial payments which he made to other persons, in violation of the provisions of the statutes just referred to. The indictment contains two counts, each of which is predicated upon an alleged violation of each of the two sections of the revenue law just mentioned. To this indictment, upon arraignment, defendant pleaded not guilty, and later filed three special pleas.

The first special plea alleges that defendant was called before a revenue agent for examination concerning certain deductions taken by him in his income tax returns for the years 1927 and 1928. After a series of preliminary questions were asked, he was interrogated as to the names of the persons to whom certain payments of money had been made, and for which he had claimed deductions. He refused to answer the questions, and, when asked why, answered, because it would incriminate himself under the laws of the United States. Then a stenographic report of the entire examination was set out and he invoked the protection of the Fifth Amendment to the Constitution. The second special plea is of the same general tenor as the first, except that it alleges it would incriminate him and make him liable to a prosecution for a violation of the laws of the state of Illinois, incorporating, by reference, the testimony set out in the first special plea. The third special plea alleges that he was called and examined under the provisions of the two revenue acts above cited; that it gave him no opportunity to claim his immunity in court, but he was required to submit to examination before a revenue agent, a ministerial officer not qualified nor authorized to pass upon the incriminating phases of the questions submitted; that there was a statute of the United States whereby such an examination might have been had before the District Court of the United States having jurisdiction; that, by reason of the government proceeding under the two sections of the statute above cited, the proceeding was a nullity and, therefore, he was not liable to any criminal prosecution by reason of his failure to answer the questions propounded.

The government demurred to each of the special pleas.

The third special plea presents no defense to the indictment. It was entirely optional with the representatives of the Commissioner of Internal Revenue as to which statute they would follow in attempting to get the information which they were seeking from the defendant. It was their privilege to adopt any method provided by law for that purpose. In this case, the revenue agent who made the investigation elected to follow the statute which authorized the proceedings which were had and out of which it is contended the criminal liability grows. The defendant had no control over the matter, nor did he have any right to have the revenue agent pursue any particular remedy.

The demurrer to the third special plea must be sustained.

As to the second special plea. It has been held that because the testimony which a witness may be required to give in obedience to the laws of the United States might have a tendency to incriminate him under the laws of a state, a separate and different sovereignty, it would not bring the witness within the protection of the Fifth Amendment to the Constitution, if he were not also incriminated under the laws of the United States. Brown v. Walker, 161 U. S. 597, 16 S. Ct. 644, 40 L. Ed. 819; Jack v. Kansas, 199 U. S. 372, 26 S. Ct. 73, 50 L. Ed. 234, 4 Ann. Cas. 689; Hale v. Henkel, 201 U. S. 43, 26 S. Ct. 370, 50 L. Ed. 652; Elwell v. United States, 275 F. 775 (C. C. A. 7th Cir.).

In the light of this rule, the demurrer to the second special plea will have to be sustained.

The first special plea to the indictment goes to the heart of the controversy here. The admitted facts in the plea show that if defendant had answered the questions truthfully he would undoubtedly have furnished the names of his coconspirators in the common design to defraud the United States, in violation of section 37 of the Criminal Code (18 USCA § 88) as well as evidence which might expose him to prosecution for other offenses against the United States. Of course the contention on behalf

of the government is that the revenue agents were endeavoring to procure the names of persons to whom money had been paid in large sums so that they might thereby be enabled to check up the income tax returns, if any, of the persons, and in that way procure the government its income tax; at the same time it was procuring, for the government, information which would tend to incriminate Murdock.

If the transcript of the evidence taken at the revenue agent's hearing had not been included in the plea, there would be little question but that the first special plea presents a clear defense to the offense laid in the indictment, for Murdock could not have "answered with entire impunity." Arndstein v. McCarthy, 254 U. S. 71, 41 S. Ct. 26, 65 L. Ed. 138. However, by the setting out of the transcript of the proceedings at the revenue agent's hearing, at which time it is charged in the indictment the defendant violated the criminal laws, we are able to see just what did happen upon that occasion.

The witness admitted he had been interested in the operation of slot machines in Madison county; that he had paid money to certain persons, which he had deducted as an expense of his business in the income tax returns. The inference is quite clear that this money was paid to certain persons to procure protection from criminal prosecution by reason of defendant's illegal enterprises. The witness was asked to give the names of the persons to whom the money was given, and the purpose for which it was paid. Invariably, under the advice of counsel, he replied that he refused to answer. Upon being asked why, he would say, because to do so would incriminate and degrade him. Whereupon the examiner, an attorney for the government, would put the question: "Under what law is it your contention that you would incriminate yourself, State or Federal?" To this question he would answer: "State." Then, later in the examination, the question would be put by the attorney: "When you say that you are afraid you would incriminate yourself, do you refer to the laws of the State as distinguished from the Federal laws?" His answer would be "Yes."

At no time during the examination did he say that he refused to give the names of the persons to whom the money had been paid on the ground that he would be incriminated under the laws of the United States, but his expressed fear of incrimination was by reason of the criminal laws of Illinois.

In these circumstances, it is argued with a great deal of force that Murdock thereby waived any immunity granted by the Fifth Amendment to the Federal Constitution by reason of exposing himself to criminal prosecution under the federal law. The immunity granted to a witness by the Fifth Amendment can be waived. In parte Tracy (D. C.) 177 F. 532; Thompson v. United States (C. C. A. 7th Cir.) 10 F.(2d) 781; Diggs v. United States (C. C. A.) 220 F. 545, affirmed 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168.

As I said before, the very material question involved in the consideration of the first special plea is whether or not this defendant waived his constitutional right to immunity under the Fifth Amendment? A reading of the evidence taken before the revenue agent tends to sustain the conclusion that Murdock was more concerned with protecting other people with whom he has had relations of a criminal nature than he was concerning his own immunity. A clear purpose to shield others is shown. The answer, frequently made, was brought out upon defendant's examination by the government attorney who conducted it. In stating his own reasons, defendant placed no limitations upon the fear of incrimination. When asked why he refused to answer, he would say upon the ground that he would incriminate himself; then would follow the technical question which brought the answer which fixed his fear of prosecution to be under the laws of the state.

I am inclined to feel that defendant waived his constitutional right granted to him by the Fifth amendment, and, yet, I am not free from doubt by reason of the particular manner in which the answer limiting his fear of incrimination was procured. The efficacy of the statutes upon which this prosecution is based has been seriously questioned in administration, for the reason that they contain no immunity provisions broad enough to cover the dangers incident to forcing a taxpayer to a full disclosure.

Considering this fact, I feel warranted in resolving the doubt, which I have as to whether or not the defendant has waived his privilege under the Fifth Amendment, in his favor to the extent of overruling the government's demurrer to the first special plea, thereby affording the government, if it elects to stand by the demurrer, an opportunity to procure an immediate consideration of the questions

involved, by the United States Supreme Court. The order therefore will be: "Demurrer to first special plea overruled; demurrer to the second and third special pleas sustained."