**UNITED STATES of America,
Petitioner,**

v.

**Pasquale PAGANO, Respondent.**

United States District Court
S. D. New York.

March 9, 1959.

Arthur H. Cristy, U. S. Atty., So. D. New York, New York City, William Esbitt, Sp. Asst. to the Atty. Gen., and Edward Brodsky, Sp. Atty., Dept. of Justice, Brooklyn, N. Y., for the United States.

Daniel H. Greenberg and Vincent J. Velella, New York City, for respondent.

FREDERICK van PELT BRYAN, District Judge.

This is a proceeding to hold respondent in criminal contempt of court, pursuant to 18 U.S.C. § 401. The contempt charged is the alleged refusal of respondent to answer certain questions propounded to him as a witness before a Grand Jury, after a grant of immunity conferred on him pursuant to 18 U.S.C. § 1406.

A hearing was held before me and testimony was taken. Evidence was offered on behalf of the United States and received. No evidence was offered on behalf of respondent.

There is no dispute as to the facts. The uncontradicted evidence offered by the United States at the hearing established the facts to be, and I find them to be, as follows:

1. On January 15, 1959 respondent Pasquale Pagano duly appeared before a Grand Jury in this district pursuant to a subpoena.

2. The Grand Jury before which Pasquale Pagano appeared was duly constituted and fully empowered to investigate matters relating to alleged violations of the Federal Narcotics Laws and other violations of federal law.

3. Pasquale Pagano was asked questions which were relevant and pertinent to matters pending before the Grand Jury, and Pagano refused to answer on the ground that his answers might tend to incriminate him, relying on his rights under the Fifth Amendment to the Constitution of the United States.

4. After authorization by letter from the Attorney General of the United States, the United States Attorney for the Southern District of New York applied to this court on January 20, 1959 for an order directing Pasquale Pagano to testify pursuant to the provisions of 18 U.S.C. § 1406.

5. On January 28, 1959 the Honorable Archie O. Dawson, a judge of this court, after a hearing at which Pasquale Pagano and his counsel were present, duly issued an order directing Pagano to return before the Grand Jury on February 9, 1959 and to answer the questions propounded to him, subject to the provisions of 18 U.S.C. § 1406.

6. On February 9, 1959 Pasquale Pagano appeared before the Grand Jury and was asked the same questions propounded to him on January 15, 1959, except that several questions asked at Pagano's first appearance were not asked him on February 9, 1959.

7. On February 9, 1959 Pagano refused to answer the questions so put to him on the ground that the answers might tend to incriminate him and again relied on his rights under the Fifth Amendment to the Constitution of the United States.

8. On February 9, 1959 this court ordered Pagano to show cause why he should not be adjudged in contempt of this court for failure to answer such questions before the Grand Jury on said day.

The authenticity of the minutes of the proceedings before the Grand Jury on January 15 and February 9, 1959 are admitted and respondent also concedes that the procedures followed have been in compliance with the statutory requirements of 18 U.S.C. § 1406. Respondent offered no evidence at the hearing and he raises only questions of law.

18 U.S.C. § 1406 provides in effect that when in the judgment of a United States Attorney testimony of a witness before a Grand Jury concerning the violation of certain of the narcotic laws is in the public interest, upon the approval of the Attorney General he may apply for an order of the court that the witness shall be instructed to testify. The entry of such an order removes the witness' privilege against self-incrimination. The statute, however, provides the witness with immunity from subsequent prosecution in the following language:

"* * * no such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding * * * against him in any court. * * *"

At the outset respondent questions the sufficiency of the order to show cause by which the hearing was brought on. His counsel urges that the order is fatally defective since there was not annexed a copy of the questions propounded to Pagano on February 9, 1959. The application for the order to show cause had, as Exhibit A, a list of questions which bore the title "Questions Propounded to

Pasquale Pagano * * * on January 15, 1959". However, all the questions asked on February 9, 1959 had been also asked on January 15, 1959, though certain questions asked on January 15 were not asked on February 9. Even so the respondent was offered a reasonable adjournment of the hearing on the application to hold him in contempt when his counsel raised this question. His counsel stated that he needed no adjournment and expressly waived any rights which he might have had because of the failure to label Exhibit A as being a copy of all the questions propounded on February 9, as well as a copy of most of the questions asked on January 15. A copy of the questions asked before the Grand Jury on February 9 was received in evidence. It is apparent that respondent was in no way misled by the caption on Exhibit A nor in any way prejudiced thereby. There is thus no merit to this contention.

■ Respondent also objects to the form of the questions which he refused to answer. The vice claimed is that certain of the questions assumed states of fact that made a yes or no answer impossible. The objection assumes that prejudice to the rights of the witness under interrogation is inherent in such a question. But the only possible prejudice is the confusion which the question may engender in the mind of the witness. There is no indication here that the respondent did not understand the questions. The questions are not of such complexity that a person of average intelligence could not easily understand and answer them. This objection is also without merit.

Respondent next contends that some of the questions he refused to answer dealt with a crime for which he had been previously convicted upon a trial, and that therefore to hold him in contempt for refusing to answer such questions would amount to double jeopardy.

■■ There is no authority for this contention and it is devoid of merit. Pagano's conviction was for conspiracy to violate the narcotic laws. The present charge of criminal contempt for refusal to answer questions before the Grand Jury is an entirely different charge based on entirely different acts alleged to have been committed by the respondent. A defendant may be charged with and convicted of different crimes arising out of the same acts, if Congress so provides, without being placed in double jeopardy. See, e. g., Harris v. United States, 79 S.Ct. 560, and Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405. But here the criminal conduct charged is not remotely the same as that which formed the basis of the prior conviction, nor does it concern the same transaction. No double jeopardy can arise from the conviction of respondent on this charge of criminal contempt.

The main thrust of respondent's argument is an attack on the constitutionality of 18 U.S.C. § 1406.

He argues that the shield of protection against self-incrimination under the Fifth Amendment cannot be removed unless immunity is granted against *all* prosecution, both federal and state, which might arise from answers given under compulsion. Relying on Tedesco v. United States, 6 Cir., 255 F.2d 35, he urges that Congress lacks power to grant immunity from state prosecution for crimes based on the narcotics traffic. Therefore, he concludes that whether or not § 1406 purports to grant such immunity [1], it does not, and indeed cannot constitutionally do so and that therefore the section violates the Fifth Amendment and is unconstitutional.

■ Respondent's first premise—that a witness cannot be compelled to answer over an assertion of his privilege against self-incrimination unless state as well as federal immunity is granted—is not well taken. There is therefore no need to

---

1. There is no doubt that the statute (see page 437 of 171 F.Supp., supra) on its face purports to grant immunity from state prosecutions. Tedesco v. United States, supra, 255 F.2d at pages 38–39. The question is really one of statutory construction in the light of the constitutional questions presented.

pass upon the second premise which assumes lack of congressional power to immunize a witness from state prosecution.

United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210; Id., 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381, holds that "immunity against state prosecution is not essential to the validity of federal statutes declaring that a witness shall not be excused from giving evidence upon the ground that it will incriminate him", and that "full and complete immunity against prosecution by the government compelling the witness to answer is equivalent to the protection furnished by the rule against compulsory self-incrimination". 284 U.S. 149, 52 S.Ct. 65. The Murdock case is based on the familiar "two sovereignties" concept which need not be reviewed here. See Matter of Reina, D.C.S.D.N.Y., 1949, 170 F.Supp. 592, and Tedesco v. United States, supra, which considers § 1406 in the light of Murdock and its antecedents.[2]

Respondent's position is that Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511, overruled Murdock sub silentio. I disagree. In Tedesco v. United States the Sixth Circuit's view seems to be that the bar against state prosecutions contained in § 1406 may be unconstitutional. It nevertheless holds, in view of the separability of the statute, that a witness in the position of respondent may be punished for contempt since all that is required is the grant of immunity from federal prosecution which the statute constitutionally gives him. Tedesco accepts the doctrine of the Murdock case that grant of immunity from state prosecution is not constitutionally required as unimpaired and still controlling.

It seems to me unnecessary to consider whether there is no congressional power to immunize a witness from state prosecutions in the field of narcotics traffic.[3] For, if, as I view it, the Murdock case is still good law and the statute is separable, there is no need to pass on that question.

While Ullmann v. United States, supra, passed over Murdock in silence, that does not in any way justify the assumption that the Supreme Court overruled Murdock. The two cases are not inconsistent. Whatever the criticisms of the Murdock doctrine,[4] silence as to Murdock in Ullmann does not involve such a departure from previous law as would allow "an

2. See also Feldman v. United States, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408; Jack v. State of Kansas, 199 U.S. 372, 26 S.Ct. 73, 50 L.Ed. 234; Knapp v. Schweitzer, 357 U.S. 371, 78 S.Ct. 1302, 2 L.Ed.2d 1393. Although it may be argued that there is a difference between the use of testimony compelled by a state (under a state immunity statute) in a federal court and the witness' Fifth Amendment privilege, the cases do not make such a distinction. See, e. g., Marcello v. United States, 5 Cir., 196 F.2d 437.

3. Tedesco indicated that while in the field of national security Congress may preempt state competence, Commonwealth of Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640, "* * * both state and federal authorities have historically exercised concurrent jurisdiction in narcotic matters". Also, the court thought it unimportant whether congressional power over narcotics was based on "the power to tax, the power

to regulate commerce, or on any other constitutional grant of power". In Ullmann, however, the Supreme Court stated "We have already, in the name of the Commerce Clause, upheld a similar restriction [to immunize from state court prosecutions] on state court jurisdiction, Brown v. Walker, 161 U.S. 591 at pages 606–607, 16 S.Ct. 644, 650–651, 40 L.Ed. 819, and we can find no distinction between the reach of congressional power with respect to commerce and its power with respect to national security". 350 U.S. at page 436, 76 S.Ct. at page 505.

4. "The doctrine is so strongly entrenched that it appears as futile to protest as it is to expect an individual to feel that his constitutional privilege has been safeguarded because the penitentiary into which his answer may land him is under the supervision of the state instead of the federal government." Marcello v. United States, 5 Cir., 196 F.2d 437, 442.

inferior court * * * [to] modify a Supreme Court doctrine in the absence of any indication of new doctrinal trends". See United States v. Ullmann, 2 Cir., 221 F.2d 760, at page 762.

■ Therefore, since § 1406 grants at least federal immunity (see Murdock) there is no need to pass on the argument as to congressional power to grant state immunity here. Whether or not the respondent is immunized from state prosecutions, he may be held in contempt for failure to answer questions after being granted federal immunity under Section 1406.

Finally, respondent argues that even if the statute is constitutional its grant of immunity does not extend to prosecutions unrelated to narcotics traffic or control. He urges that a number of the questions asked do not on their face directly relate to this subject matter and that no immunity is granted concerning the matters to which they may refer. He therefore claims that he is still entitled to assert his Fifth Amendment privilege as to these matters.

■ Section 1406 provides immunity from prosecution or subjection to any penalty or forfeiture "for or on account of *any* transaction, matter, or thing concerning which he [the witness] is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in *any* criminal proceeding" except perjury or contempt committed while giving such testimony. (Emphasis supplied.) Thus the immunity, if granted, extends to all matters to which the testimony given may relate.

■ Here immunity was specifically granted to respondent as to the answers which he might give to each and every question asked him on February 9 by Judge Dawson's order of January 28. Moreover, Judge Dawson expressly found that all of the questions were related "to matters under inquiry before said Grand Jury". It is plain from a reading of the

questions that all of them were so related and were relevant and pertinent to the Grand Jury's inquiry as to illegal narcotic traffic or control. The fact that the precise relationship to that subject matter is not revealed by the language of a question does not mean that it is irrelevant to the inquiry. If this were so a Grand Jury would be unable to conduct a proper investigation to determine who is chargeable with criminal conduct. The most that could be required is that the questions read in context bear a reasonable relationship to the subject of illegal narcotic activity and these questions plainly do. Indeed, it may well be that the relationship of the questions to the subject of the inquiry is a matter for the Grand Jury rather than the court in the absence of a clear abuse of the Grand Jury's power.

■ It is settled by Ullmann v. United States, supra, that the judge who hears the statutory application may extend the immunity. His function is to pass upon whether "the case is within the framework of the statute". Ullmann v. United States, supra, 350 U.S. at page 431, 76 S.Ct. at page 503. As Judge Weinfeld, sitting in the Ullmann case in the District Court, said with respect to 18 U.S.C. § 3486, a similar statute, " * * * the witness is protected * * * by a determination that an effective grant of immunity has been made. The immunity takes effect when the court finds that all the prerequisite conditions have been met * * *". 128 F.Supp. 617, 625.

■ That has been done here. The immunity granted the respondent covers the answers to all of the questions asked him which he has refused to answer which form the basis of the present charge of contempt made against him. There is no justification for his refusal to obey Judge Dawson's directions to answer them.

The undisputed facts establish that the respondent is guilty of contempt of this court as charged for failure to answer the questions propounded to him before the Grand Jury on February 9, 1959 and

I so find. Sentence will be imposed at a time and place which will be fixed by the court in the order to be entered on this opinion.

Settle order on notice.