**Dominic TEDESCO, Appellant,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 13227.**

United States Court of Appeals Sixth Circuit.

May 14, 1958.

James G. O'Hara, Detroit, Mich., for appellant.

Max H. G. Goldschein, Criminal Division, Dept. of Justice, Washington, D. C., Frederick R. Franklin, Criminal Division, Dept. of Justice, Washington, D. C., Donald F. Welday, Jr., Asst. U. S. Atty., Detroit, Mich., on the brief, for appellee.

Before SIMONS, Chief Judge, and ALLEN and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

On the ground that his answers would tend to incriminate him, appellant refused to answer certain questions asked him before the Grand Jury for the Eastern District of Michigan which was investigating violations of the narcotic laws of the United States. In compliance with the Narcotic Control Act of 1956 [70 Stat. 574; § 1406, Title 18, U.S.C.A.], the United States Attorney having applied for approval and obtained proper authority from the United States District Court for the Eastern District of Michigan to grant appellant immunity, Tedesco was brought again before the Grand Jury to answer questions propounded to him previously on January 27, 1957.

Appellant Tedesco again refused to answer certain questions for the reasons previously stated by him. The court ordered him to show cause why he should not be held in contempt for failure to answer the questions as directed by order of the court. At the hearing on the show-cause order, appellant's attorney, in the presence of the appellant and in open court, conceded that appellant had persisted in his refusal to respond to the questions, as ordered, on the ground that his answers would tend to incriminate him. Accordingly, appellant was found guilty of criminal contempt and sentenced to the custody of the Attorney General for a period of two years, with the opportunity to purge himself by offering to comply with the court's order. This appeal is from that judgment and commitment.

Appellant Tedesco contends that the Narcotic Control Act of 1956 purports to grant him immunity from state, as well as federal, prosecution, that Congress is without power to grant him state immunity, that the alleged immunity-from-state-prosecution provision is inseparable from the remainder of the immunity statute and that, in combination, these provisions render the entire immunity statute invalid. He urges further that while he is a witness before a federal grand jury he may not be compelled to give testimony which would tend to incriminate him under state law.

Briefly stated, the government's position is that the Fifth Amendment privilege protects a witness from self-incrimination under federal law, but not under state law; and that a federal statute compelling the production of self-incriminating testimony is valid as long as it provides immunity at least co-extensive with that constitutional privilege. The further argument is made that the immunity section of the Narcotic Control Act of 1956 was intended to and does forbid state prosecution of a witness testifying under compulsion and that it was clearly within the power of the Congress to grant such immunity. It is stated that, should Congress be found to have exceeded its power in granting state immunity, the statute should be construed as *not* prohibiting state prosecution and thereby saved from the nullity which befalls a statute having inseparably commingled valid and invalid provisions.

The thrust of appellant's contention is that the federal immunity statute is invalid, inasmuch as it does not validly grant state immunity. The Supreme Court has decided this issue against appellant's contention. See United States v. Murdock, 284 U.S. 141, 52 S.Ct. 63, 64, 76 L.Ed. 210; 290 U.S. 389, 396, 54 S.Ct. 223, 78 L.Ed. 381. There, the witness asserted repeatedly that he "might incriminate or degrade" himself and that he had in mind "the violation of a state law and not a violation of a federal law." The transcript showed plainly that Murdock "did not rest his refusal upon apprehension of, or a claim for protection against, federal prosecution." The court said (284 U.S. 149, 52 S.Ct. 65): "This court has held that immunity against state prosecution is not essential to the validity of federal statutes declaring that a witness shall not be excused from giving evidence on the ground that it will incriminate him, and also that the lack of state power to give witnesses protection against federal prosecution does not defeat a state immunity statute. The principle established is that full and complete immunity against prosecution by the government compelling the witness to answer is equivalent to the protection furnished by the rule against compulsory self-incrimination. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110; Brown v. Walker, 161 U.S. 591, 606 [16 S.Ct. 644, 40 L.Ed. 819]; Jack v. State of Kansas, 199 U.S. 372, 381 [26 S.Ct. 73, 50 L.Ed. 234]; Hale v. Henkel, 201 U.S. 43, 68 [26 S.Ct. 370, 50 L.Ed. 652.]"

The Murdock doctrine was reiterated in 1944 in Feldman v. United States, 322 U.S. 487, at page 491, 492, 64 S.Ct. 1082, 88 L.Ed. 1408, which quoted the above words. In Marcello v. United States, 5 Cir., 1952, 196 F.2d 437, 442, Judge Rives stated: "The doctrine [of the Murdock case] is so strongly entrenched that it appears * * * futile to protest. * * *" Our perusal of the authorities buttresses this quotation. See also: United States v. Coffey, 3 Cir., 1952, 198 F.2d 438, 440; United States v. Greenberg, 3 Cir., 1951, 192 F.2d 201, 203; United States v. St. Pierre, 2 Cir., 1942, 128 F.2d 979, 980.

Appellant urges that the impact of recent Supreme Court decisions has eroded the Murdock doctrine to such degree that we should invoke the maxim: "Legal doctrines, as first enunciated, often prove to be inadequate under the impact of ensuing experience in their practical application. And when a lower court perceives a pronounced new doctrinal trend in Supreme Court decisions, it is its duty, cautiously to be sure, to follow not to resist it." Perkins v. Endicott Johnson Corp., 2 Cir., 1942, 128 F.2d 208, 217–218; Picard v. United Aircraft Corp., 2 Cir., 1942, 128 F.2d 632, 636; United States v. Ullmann, 2 Cir., 1955, 221 F.2d 760, 762. Recalling that the Supreme Court reaffirmed by quotation the pertinent language of the Murdock decision as late as 1944 in Feldman v. United States, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408, we shall proceed cautiously indeed to ascertain a "pronounced new doctrinal trend" in their decisions.

It is insisted that Adams v. State of Maryland, 1954, 347 U.S. 179, 74 S.Ct.

442, 98 L.Ed. 608, and Ullmann v. United States, 1956, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511, establish this new trend. The state courts of Maryland convicted Adams on evidence drawn from him before a Senate Committee investigating crime. He had been summoned as an unwilling witness. The federal immunity statute in question in the Adams case (§ 3486, Title 18, U.S.C.A.) was held by the Supreme Court to proscribe the use of evidence thus obtained to convict the witness in *state*, as well as *federal*, courts. Such a proscription on the use of tainted evidence is quite different from a total grant of immunity from prosecution. See Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110. For that reason, the Adams case sheds but little light on the issue before us.

The Ullmann case, supra, also involved the Immunity Act of 1954 [68 Stat. 745; § 3486(c), Title 18, U.S.C.A.]. There, as in the instant case, the United States Attorney obtained a court order requiring the appellant (Ullmann) to testify before a grand jury. Ullmann persisted in his refusal to answer certain questions on the ground that his answers would tend to incriminate him under state law. In due course, he was convicted of contempt. The district court's decision [128 F.Supp. 617] was based on the Murdock case, supra, and also on the ground that the Immunity Act of 1954 did grant the witness immunity from state prosecution, as well as from federal prosecution. The Court of Appeals for the Second Circuit affirmed, adopting the opinion of the district court [221 F.2d 670].

Appellant stresses the failure of the Supreme Court specifically to affirm the Murdock doctrine in the Ullmann case. He argues that the Murdock opinion was an easy answer to the issue before the highest tribunal and would have made it unnecessary to pass upon the constitutional power of the Congress to grant immunity from prosecution in state courts under state law.

We cannot accept this argument. The Murdock case was no more decisive of the Ullmann case than it is a complete answer here. The opinion in the Murdock case states that "immunity against state prosecution is not essential to the validity of federal statutes declaring that a witness shall not be excused from giving evidence on the ground that it will incriminate him, * * *" 284 U.S. at page 149, 52 S.Ct. at page 65. Thus, only the *minimum* protection essential to validity of a federal immunity statute was delineated. Nowhere does the Murdock opinion declare that the Congress may not undertake to afford an unwilling witness protection beyond this bare minimum. Lack of constitutional power to confer such protection is its only limitation in that regard. For the foregoing reason, it cannot be said that the Ullmann authority is indicative of such a "pronounced new doctrinal trend in Supreme Court decisions" as would justify ignoring the Murdock case.

The government and the appellant agree that the statute in question purports to grant to a witness testifying under compulsion both federal and state immunity. The pertinent words of the statute are: "* * * But no such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding * * * against him in any court." 70 Stat. 574, § 1406, Title 18 U.S.C.A. This grant of immunity is precisely the grant authorized in section 3486(c), Title 18, U.S.C.A., which was before the Supreme Court in the Ullmann case. The words of the statute are crystal clear— "in any criminal proceeding * * * in any court." See Adams v. State of Maryland, 347 U.S. 179, 181, 74 S.Ct. 442, 98 L.Ed. 608: "Language could be no plainer." Construction of these words of the statute is unnecessary, for nothing in the legislative history requires us to reject the clear meaning of the words employed.

With these points in mind, the problem which we must solve becomes clearer. Our conclusions are that testimony may be compelled under a federal immunity statute which provides minimal immunity co-extensive with the Fifth Amendment privilege against self-incrimination; that a grant of state immunity is not necessary to validity; and that the statute in issue here clearly undertakes to grant state as well as federal immunity.

The question must now be considered as to whether or not Congress has the constitutional power to provide the broad immunity intended. The area of congressional action in the instant case is not one pre-empted by the federal government. For example, see Commonwealth of Pennsylvania v. Nelson, 350 U.S. 497, 76 S.Ct. 477, 100 L.Ed. 640. Nor is paramount authority of the Congress in safeguarding national security involved, as it was in the Ullmann case which carefully limited the scope of its opinion to that area. Whether federal jurisdiction in the field of narcotic regulation is justified on the basis of the power to tax, the power to regulate commerce, or any other constitutional grant of power, both state and federal authorities have historically exercised concurrent jurisdiction in narcotic matters. We have grave doubt that power resides with the Congress to grant immunity from prosecution in state courts pursuant to state narcotic laws; but we need not consider the point. The Supreme Court has admonished often that "when the validity of an Act of Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." Crowell v. Benson, 1932, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598.

Two avenues of approach appear to be open to us. First, if it is ascertained that the Congress intended the immunity section of the Narcotic Control Act of 1956 to endure whether or not the statute lawfully granted state immunity, the contempt conviction must stand. Secondly, if it appears that the Congress would not have compelled self-incriminating testimony by statute, in the event that the compelled witness was not given the broad federal and state immunity intended, then the instant contempt conviction would depend upon the constitutional power of Congress to grant full state immunity.

The Narcotic Control Act of 1956 contains a separability provision, as follows: "If any provision of this Act, or the application thereof to any person or circumstances, is held invalid, the remaining provisions of this Act, or the application of such provisions to other persons or circumstances, shall not be affected thereby." § 402; 70 Stat. 576, 18 U.S.C.A. § 1401 note. Carter v. Carter Coal Co., 1936, 298 U.S. 238, at page 312, 313, 56 S.Ct. 855, at page 873, 80 L.Ed. 1160, provides the applicable yardstick: "In the absence of such a [separability] provision, the presumption is that the legislature intends an act to be effective as an entirety—that is to say, the rule is against the mutilation of a statute; and if any provision be unconstitutional, the presumption is that the remaining provisions fall with it. The effect of the statute is to reverse this presumption in favor of inseparability and create the opposite one of separability. Under the nonstatutory rule, the burden is upon the supporter of the legislation to show the separability of the provisions involved. Under the statutory rule, the burden is shifted to the assailant to show their inseparability. But under either rule, the determination, in the end, is reached by applying the same test—namely, What was the intent of the lawmakers? * * *

"* * * Whether the provisions of a statute are so interwoven that one being held invalid the others must fall, presents a question of statutory construction and of legislative intent, to the determination of which the statutory provision becomes an aid. 'But it is an aid merely; not an inexorable command.' Dorchy v.

State of Kansas, 264 U.S. 286, 290 [44 S.Ct. 323, 325, 68 L.Ed. 686.]

The existence of the separability provision requires decision as to whether there is a "clear probability that the legislature would not have been satisfied with the statute", unless it were construed so as effectively to grant state immunity to the witness under compulsion. In our judgment, the legislative intent is clearly on the side of the presumption of separability. The committee reports shed little light on the intent with respect to the immunity provisions of the Narcotic Control Act of 1956. However, we believe that Congress, in framing the immunity portions of section 1406 of that Act, used the exact phraseology of the Immunity Act of 1954 (68 Stat. 745, § 3486, Title 18 U.S.C.) with the intent that the words so used should receive the same construction. The report of the Committee on the Judiciary (House Rep. No. 2606; 83d Cong., 2d Sess.) made the separability of the 1954 statute abundantly clear: "Even though the power of Congress to prohibit a subsequent State prosecution is doubtful, such a constitutional question should not prevent the enactment of the recommended bill. The language of the amendment * * * is sufficiently broad to ban a subsequent State prosecution if it be determined that Congress has the constitutional power to do so. In addition, the amendment recommended provides the additional protection—as set forth in the Adams case, by outlawing the subsequent use of the compelled testimony in any criminal proceeding—State or Federal.

"By the use of these two distinct concepts, the committee believes that the fullest protection that can be afforded the witness will be achieved."

The words following those quoted above indicated that the conditions under which immunity would be granted were limited so as to reduce the possibility of subsequent state prosecutions to a minimum; but the language recognized that there would be instances where the compelled testimony would incriminate the witness under state statutes.

In our judgment, appellant has not carried the burden of showing that the Congress would have been dissatisfied with the statute if it should be construed to grant only federal and not state immunity. Accordingly, we do not reach the question of the constitutional power of Congress to grant state immunity in the field of narcotics regulation.

The judgment of conviction is affirmed.