**In re Giacomo REINA.**

United States District Court
S. D. New York.
Jan. 29, 1959.

Arthur H. Christy, U. S. Atty., Southern Dist. of New York, New York City, Edward Brodsky, Sp. Atty., Dept. of Justice, Brooklyn, N. Y., William Esbitt, Sp. Asst. to Atty. Gen., of counsel, for United States.

Moses L. Kove, New York City, for respondent.

DAWSON, District Judge.

This is a proceeding brought on by an order to show cause to adjudge the respondent to be in contempt of court. See Title 18 U.S.C. § 401. It is alleged that the respondent is in contempt for refusing to answer certain questions put to him when he appeared as a witness before the Grand Jury.

A hearing was held and testimony taken. The Court, after having heard the evidence offered on the part of the United States of America, no evidence having been offered on behalf of the respondent, makes the following findings of fact:

1. On December 5, 1958, Giacomo Reina duly appeared before a Grand Jury in the Southern District of New York, pursuant to a writ of habeas corpus ad testificandum duly served upon him.

2. Said Grand Jury was duly constituted in the Southern District of New

York to investigate, among other things, matters relating to alleged violations of the Federal Narcotic Laws.

3. Giacomo Reina was asked a series of questions relevant and pertinent to matters then pending before the Grand Jury and Giacomo Reina refused to answer those questions on the ground that his answers might tend to incriminate him.

4. By letter dated December 8, 1958 the Attorney General of the United States authorized the United States Attorney for the Southern District of New York to apply for an order directing Giacomo Reina to testify pursuant to the provisions of 18 U.S.C. § 1406.

5. On December 17, 1958, pursuant to the provisions of 18 U.S.C. § 1406, the Honorable David N. Edelstein directed Giacomo Reina to return to the Grand Jury on January 12, 1959 and ordered that "subject to the provisions of Title 18, United States Code, Section 1406, as amended, that Giacomo Reina be, and he hereby is, instructed to answer the questions propounded to him before the Grand Jury and to testify and produce evidence with respect to such matters under inquiry before said Grand Jury * * *."

6. On January 12, 1959, Giacomo Reina appeared before the said Grand Jury and was directed to return on January 15, 1959.

7. On January 15, 1959, Giacomo Reina returned to the Grand Jury and was asked the same questions as had been asked on December 5, 1958. He refused to answer and stood mute with respect to each question.

8. On January 15, 1959, this Court ordered Giacomo Reina to show cause why he should not be adjudged and held in contempt of court.

Title 18 U.S.C. § 1406 (Narcotic Control Act of 1956) provides in effect that whenever in the judgment of a United States Attorney the testimony of a witness in any case or proceeding before any Grand Jury for the violation of certain of the Narcotic Laws is necessary in the public interest, he, upon approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify, and upon order of the court the witness shall not be excused from testifying on the ground that the testimony required of him may tend to incriminate him or subject him to a penalty or forfeiture. It further provides that

"* * * no such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except prosecution described in the next sentence) against him in any court. No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section."

At the hearing in this proceeding, respondent admitted through his counsel that he had refused to answer the questions propounded to him, offering as his only excuse for his refusal, fear of self-incrimination. He admitted that the order of Judge Edelstein had been issued after receipt of the letter from the Attorney General, and that this order had the effect of granting him the immunity provided in the statute. The respondent offered no evidence on his behalf, but simply took the position that the statute under which Judge Edelstein had issued his order was unconstitutional as violative of the provisions of the Fifth Amendment of the United States Constitution.[1] Respondent maintains that

1. "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." U.S. Const., Amend. V.

even though the Narcotic Control Act of 1956 grants immunity to a witness from prosecution in relation to matters as to which he testifies, when compelled to testify under such Act, the Act does not grant immunity from state prosecution and therefore does not extend protection as broad as that granted under the self-incrimination clause of the Fifth Amendment.

The basic issue which this Court must therefore decide is whether the immunity provisions of the Narcotic Control Act of 1956 are constitutional and whether the respondent may be punished for contempt for failing to comply with an order issued under the provisions of this Act.

■ The law apparently is well settled that a federal immunity statute is valid even though it does not grant immunity from prosecution by state authorities. United States v. Murdock, 1931, 284 U.S. 141, 52 S.Ct. 63, 76 L.Ed. 210; Tedesco v. United States, 6 Cir., 1958, 255 F.2d 35.

In United States v. Murdock, 1931, 284 U.S. 141, 52 S.Ct. 63, 65, an action for wilfully failing to supply information under the Revenue Acts, the Supreme Court denied the contention that a federal immunity statute must give protection against state prosecutions, stating:

" * * * This court has held that immunity against state prosecution is not essential to the validity of federal statutes declaring that a witness shall not be excused from giving evidence on the ground that it will incriminate him, and also that the lack of state power to give witnesses protection against federal prosecution does not defeat a state immunity statute. The principle established is that full and complete immunity against prosecution by the government compelling the witness to answer is equivalent to the protection furnished by the rule against compulsory self-incrimination. Counselman v. Hitchcock, 142 U.S. 547, 12 S.Ct. 195, 35 L.Ed. 1110; Brown v. Walker, 161 U.S. 591, 606, 16 S.Ct. 644, 40 L.Ed. 819. Jack v. Kansas, 199 U.S. 372, 381, 26 S.Ct. 73, 50 L.Ed. 234. Hale v. Henkel, 201 U.S. 43, 68, 26 S.Ct. 370, 50 L.Ed. 652. * * * "

■ Therefore, it is clear that the federal courts need not concern themselves with whether or not the testimony would be incriminating under the laws of another jurisdiction. The federal courts need only be certain that the immunity statutes extend protection in the federal sphere as extensive as the Fifth Amendment. The privilege of this amendment may be invoked against the federal government only when there is danger of federal prosecution and it is well established that a grant of immunity from federal prosecution is sufficient to overcome the privilege, notwithstanding a real danger of state prosecution. United States v. Murdock, 1931, 284 U.S. 141, 52 S.Ct. 63.

This concept, as expressed by the Murdock decision, is the controlling doctrine in this area today. See, Tedesco v. United States, 6 Cir., 1958, 255 F.2d 35; United States v. Coffey, 3 Cir., 1952, 198 F.2d 438, 440; Marcello v. United States, 5 Cir., 1952, 196 F.2d 437, 442 (where the court stated: The doctrine [of the Murdock case] is so strongly entrenched that it appears * * * futile to protest * * * *."); United States v. Greenberg, 3 Cir., 1951, 192 F.2d 201, 203; United States v. St. Pierre, 2 Cir., 1942, 128 F.2d 979, 980.

■ The decisions in both the state and federal courts which hold that the immunity statutes of either the state or federal government need be only as extensive as either the state or federal constitutional privilege against self-incrimination are apparently based on the "two sovereignties" concept. This concept, simply stated, is that the federal government and the individual states are separate sovereignties and constitutional provisions against self-incrimination are

enforceable only against the sovereignty whose constitution guarantees the privilege. Knapp v. Schweitzer, 1958, 357 U.S. 371, 380, 78 S.Ct. 1302, 2 L.Ed. 2d 1393. Such provisions, therefore, pertain only to the protection of a witness from prosecution by the government whose conduct they limit. 8 Wigmore, Evidence, 3d ed. § 2258 (1940).

█ With the above background the result in this proceeding is apparent. It is clear that testimony of a witness may be compelled under a federal immunity statute which provides immunity co-extensive with the Fifth Amendment privilege against self-incrimination; and that a grant of state immunity is not necessary to validity. Tedesco v. United States, 6 Cir., 1958, 255 F.2d 35.

██ The Court concludes as a matter of law that the immunity granted by the Narcotic Control Act of 1956 is not unconstitutional; that it is not unconstitutional to compel the witness to testify before the Grand Jury on the matters concerning which he was interrogated, in view of the immunity granted him by the Narcotic Control Act of 1956; and that refusal of the witness to comply with an order of the court directing him to answer the questions addressed to him constitutes a contempt of court.

█ The Court finds the respondent to be in contempt of court and directs that he be punished by imprisonment for two years, to commence at the expiration of the sentence which he is now serving. The Court recognizes that the refusal of the witness to answer the questions when first addressed to him may have been a procedural device to secure a determination of the issue of law which he presented. Under those circumstances the Court directs that the witness shall have 60 days from the date of this judgment to purge himself of his contempt by answering the questions which have been addressed to him by the Grand Jury and directs that if he does purge himself of contempt within this period the sentence imposed herein shall be vacated. So ordered.